Good morning, Your Honor. Robert Altagan and William Brownstein. Robert, I represent Vicente Cortez only. Mr. Brownstein represents the Grain Company. And I would like to address the Court regarding our appeal and primarily focus on the issue of alter ego as it applies to my client, Vicente Cortez, the individual. Well, will Mr. Brownstein be arguing too? He will be arguing on behalf of the Grain Company. Okay, so have you allocated your time? Yes, yes, we have. We spoke to the clerk prior to the hearing and allocated time. I have approximately seven minutes, I believe. Okay. Basically, I'd like to give briefly some history here. The Court granted summary judgment and awarded a judgment against my client on a theory that somehow my client was the alter ego of this entire transaction, offering virtually no evidence to support an alter ego finding. The facts are, and we put it into evidence in the opposition to summary judgment, that my client started superior in 2008 and in January 1st of 2009 turned over the operations and sold it to his two sons from a prior marriage, Juan and Jose Cortez, to operate the business. They operated the business without any involvement of Mr. Vicente Cortez, who was out of the business. In 2011, apparently, Atterbury Grain, a large grain company, delivered to this small company in California, in the Los Angeles area, that cleans corn for tortilla companies, that people that manufacture tortillas, a huge shipment. There was some dispute regarding the payment. It eventually went to arbitration, and a judgment was rendered against Superior Grain Company at the time that my client had nothing to do with the company. His two sons were operating it. What about Morena? Was she involved? Morena, the daughter. The daughter was also involved. But she eventually withdrew, and at the time that the transaction occurred, the two shareholders were Jose and Juan. In 2012, my client formed a company called Grain Company, similar business. He invested $140,000 to buy equipment from Superior, totally not disputed. He then canceled the original note, which he took in 2009, January, when he originally sold the Grain Company and took a security interest in all of the Grain Company equipment at that time. Excuse me, in the Superior business at that time. In 2012, Grain Company started operating a business. There was an approximate three-month gap, which was also put into the record. And in 2013, a bankruptcy was filed by Superior. The bankruptcy of Superior was reviewed, evaluated by the trustee, who eventually abandoned all the assets, which included any claims that Atterbury would have against my client for alleged fraudulent conveyance, constructive fraudulent conveyance, unjust enrichment, or alter ego. This matter was granted on summary judgment. We put in evidence, one, that my client paid $390,000 for the equipment from Superior. Two, my client stopped being involved in Superior at the beginning of 2009. Three, there was virtually no evidence put in by the plaintiff of what the value of the company was at the time that my client purchased it for $390,000. Four, there was virtually no evidence put in that my client engaged in conduct which would result in my client being found to be the alter ego of either Grain Company, which is a valid California corporation, and or Superior at the time of the alleged action. It would be totally unjust to allow this, a summary judgment, when there were multiple issues of fact, primarily to the issue of alter ego, to have my client saddled with a judgment which was originally against Superior in 2013 as a result of a grain arbitration, which he was no way involved or participating in, to have a judgment against his personal assets for this huge amount of money on summary judgment, when we put into evidence factors to show that there were multiple trial issues, the fact that a jury could find that he did not conduct himself in a manner which would be considered fraudulent conveyance or constructive fraudulent conveyances. And it just seems to me that the court, for whatever reason, I don't believe there was sufficient evidence to warrant summary judgment, even if we didn't put any opposition in, because we raised viable issues. One, we paid money. Two, we weren't involved. Three, where's the alter ego? There was no proof of any commingling of money. The only finding was they were all family, and therefore, because they're family, they're responsible. That was the interpretation that I got from reading the court's ruling. They were family, father and son, therefore father's liable. That can't be the law. There was no evidence to support any alter ego finding at all. And I would submit that this case should go to trial. There was enough evidence to support us going to trial. This case should not have been granted on summary judgment. There's no way that there was a sufficient record to support a finding that there was, as a matter of law, my client was the alter ego. I have a question. Yes. It's on the unjust enrichment claim. So did the evidence show that Grain had access to and processed and sold any of the 115,000 bushels of corn that Superior had purchased from Atterbury? Absolutely not, because the delivery of the Atterbury corn allegedly was in 2011. And, in fact, if the court wants to know what happened with that, apparently it sat in the railroad yard because it was defective product and Atterbury wouldn't take it back. And, unfortunately, the people operating Superior at the time, young men and authorities, weren't clever enough, smart enough to go to a lawyer to figure out what to do with respect to that problem. But, again, in this particular case, there is no evidence to support an alter ego against Vincente Cortez. And then to say that he's responsible for the full amount of the judgment, I don't think is appropriate. I think we should be entitled to our trial on the merits. Thank you. Thank you. Mr. Brownstein. Thank you, Your Honors. My client is Grain Company. I'm the bankruptcy attorney also for Grain Company, which filed shortly after the judgment because we disputed what the judge ruled in the district court. In effect, what occurred was time one, 2009, the owner of the company, the father who set up a business, hopefully, to have the children take it over, was convinced that the children could do it, and he got out of it. He's not a real sophisticated businessman. He's from El Salvador. He doesn't even – we had to get a translator to even speak, but that doesn't mean he's not smart and doesn't know what he's doing. 2009, he got a note for $250,000 to be paid. Later on, the kids got this, what they testified at the deposition, corn which was offered to them with no security from Atterbury. Unfortunately, that was not good corn. It had problems with it and not being sophisticated. They didn't go to an attorney, as Mr. Altagan testified, and they didn't go to try to dispute the fact that they had this bad corn. Atterbury wouldn't take it back. They ended up, as a result of that, the business went down and they ended up coming to me to do a bankruptcy, which I did in 2012. In the Chapter 7 bankruptcy, which was liquidating bankruptcy, we listed as one of the creditors Atterbury Grain. Not only did I list the location in Texas, I listed the location of their attorney, which is on Grand Avenue. Their attorney showed up at the 341A meeting. I included that in my motion to dismiss, which was denied by Judge Riel. And in the bankruptcy case, after I think it had to have been half an hour to an hour of testimony, the trustee took the matter, continued it, ultimately took it off calendar, but filed a notice of possible dividend to file claims. That was served on all creditors, including both addresses for Atterbury Grain. It gave a deadline, and that's also in the papers, Your Honor. It gave a deadline of 2015 in which any creditor that claimed to have a claim against Superior had to file a proof of claim. Well, as of that date, which was January 13, 2015, and this went out on October 16, 2014, Atterbury never filed a claim. The proof of service, I mean, the docket before this Court shows that they never filed a claim. This is part of the record. There is no claim. Now, part of my argument before the District Court is if they had a claim, if they assert they have a claim, they should have filed that in the Superior case. By not doing it, that bars you from having a claim. You can't resurrect something that's dead at that point. That was the deadline. That was it. The trustee found that there were no assets in the Superior case. He abandoned the assets, saying there's nothing of any value. And then, lo and behold, two years later, we get served with a complaint claiming alter ego, claiming unjust enrichment, claiming avoidance of fraudulent conveyances, whatever the four elements are or the four elements that they raised in the complaint. Now, one of the key elements is adequacy of consideration that was paid. Mr. Cortez, now standing there with a business that's closed down, knowing that he's going to lose everything, he says, I'm going to start a business. I'm going to start a new entity. And as far as I'm concerned, you kids are out of it. The family's out of it. There's nothing to do with it. I'm trying to somehow or other resurrect. According to the brief, they misleadingly say that they hired the same employees. They had all of the same property. Property was pretty much worthless at that point. They couldn't even clean the grain. The employees that they had that they hired, they went out and put applications up. They had one or two of the seven employees. I think one was the son. They didn't even hire Jose Cortez. They hired Juan, basically, to manage the place, or he hired Juan. This is what's going on in the case. I believe that going for a trial on the merits, getting into all of the issues, we're going to be able to establish that there was adequate value, there was adequate consideration, it was a contemporaneous exchange, and that I even believe that if this is given the right to do it, there would be an issue of judicial estoppel by not filing a claim and now being barred from having a claim against Superior. If you don't have a claim against Superior, how do you have a claim against Green, which is the new entity? Did they file a claim in the Grain bankruptcy? They did after I filed a motion to have them disallowed, and I claim it was late, late filed. We did file a complaint to invalidate a preferential transfer, but they did file a late claim, and that hasn't been resolved as of yet, Your Honor. Do I time up or do I still have time? You have one minute and 43 seconds if you want to reserve it. I'll reserve that for replying. Thank you. Thank you. Good morning, Your Honors. Joe Akutirianakis on behalf of Atterbury Grain. I mean, I suppose I'll start with this Court's duty is to review Judge Reel's order granting Atterbury's motion for summary judgment in this case and determine if the record before Judge Reel on that motion included genuine issues of material fact that preclude summary judgment and require a trial. What Mr. Brownstein just spent the last seven minutes or however long it was talking about had nothing to do with the motion for summary judgment. The motion that he was discussing where he said, oh, you don't have a claim, you should have made this claim in the bankruptcy and all that, that was made under Rule 12b-6 before the United States District Court. This is reflected in the docket at supplemental excerpt of record pages 80 and 81. Docket number 10 is the motion that Mr. Brownstein was discussing, and docket number 17 is Judge Reel's order denying that motion. No appeal was taken from that order. Did you draft the order that Judge Reel signed or did he draft it himself? He ruled from the bench, Your Honor, and directed us to submit a proposed order consistent with that ruling. Okay. So I guess my question is ordinarily fraudulent intent requires a jury trial because it's usually a disputed fact and it would defeat summary judgment. How did Judge Reel conclude that, I guess, Mr. Cortez was the alter ego of Grain and Superior? Well, with respect to alter ego, Your Honor, and again, I must refer this Court to the record before the District Court, and if you refer to Mr. Altagan's Brownstein's opposition motion for summary judgment, our excerpt of record 38 through 46, you won't find the words alter ego in that document. So I was surprised to hear Mr. Altagan lead with that this morning because, and as I was sitting here listening to him, I read through it. He didn't even raise any issues in respect of alter ego. He's being held personally liable for the judgment, right? Yes, Your Honor, and I would agree with that. Under what theory? That he is the alter ego of Grain and of Superior, and that Grain and he as alter egos are the successors of Superior. So my question was, on what basis was that finding made? On the basis that, well, most generally, Your Honor, that they meet the test for alter ego, that is unity of interest and that inequity would result from ascribing this action to the corporation alone. In this case, we made a well-taken and adequately supported motion for summary judgment. We cited 15 undisputed, uncontroverted facts. Those were all undisputed in material part at the motion for summary judgment stage. Our, I should say, as Your Honor knows, in this California, the local rule 56-1,-2, and-3 require the parties to file a statement of uncontroverted facts and the non-moving party to file a statement of genuine issues if a trial is required, and if they don't do that, then the facts are deemed uncontroverted. In this case, Mr. Altagan and Mr. Brownstein filed a statement of genuine issues, and I'm looking for it in the record here. It's at ER 48 through 53, I'm sorry, Your Honor, through 55, and it indicates undisputed, undisputed, undisputed, undisputed. None of these facts were disputed. In fact, they were expressly stated to be undisputed by the defendants in this case. The only ways in which they were disputed are immaterial ways. For example, with respect to uncontroverted fact number 7, this relates to the sublease. One of the issues in the case, although it's a minor one, is that when Superior closed its doors and the next day Grain opened its doors in the same place with the same employees, the same suppliers, the same customers using the same equipment, there was a sublease between Superior Grain and the Grain Company, and the dispute with respect to that sublease was that initially the sublease was by Juan Cortez doing business as Superior Grain, and subsequently there was a second sublease executed where he just said Juan Cortez and left out the DBA Superior Grain. That was the dispute they raised with respect to that fact. And the other facts that were disputed at summary judgment were likewise, Your Honor, immaterial disputes. The only issues that were raised on the motion for summary judgment were for what counsel refers to as further facts. These are at page 54 and 55 of the excerpts of record that relate to this promissory note. And you heard counsel, Mr. Altagan, refer to the promissory note and say that his client paid $390,000 to Superior for the business. That's not so, and there's no evidence of that before the district court. But if it had been the case, then that $390,000 would have been there to satisfy the company's debt to Atterbury. It's Judge Gould, if I could interject a question. I'd like to follow up on a question that Judge Wardlaw asked with this. Is a showing of fraudulent intent necessary to sustain the fraudulent conveyance claim under state law? Not specifically, Your Honor. That would be one way to show it. But you can demonstrate what is called in the Uniform Avoidable Transfers Act the intent to delay, hinder, or defraud. Maybe they're not in that order. But defraud would simply be one of the means by which a plaintiff, in this case, could prove entitlement to relief under that section, which is California Civil Code Section 3439.04a.1. There are other means. What was the basis on which the district judge ruled here on that? There are a number of factors, Your Honor. What did Judge Rios say he was basing his oral decision on? Okay, so the factors are there are 11. In another matter, Judge Morrow referred to these as the badges of fraud. The transfer obligation was to an insider. The debtor retained possession or control. The transfer obligation was whether it was disclosed or concealed. Whether the debtor had been sued or threatened with suit. Whether the transfer was of substantially all of the debtor's assets. Whether the debtor absconded. I believe that one is not implicated here. Whether the debtor removed or concealed assets. That one, likewise, I don't believe is squarely implicated. Whether the value of the consideration received is reasonably equivalent to the value transferred. Whether the debtor was insolvent or became insolvent. Whether the debt occurred shortly before or shortly after a substantial debt was incurred. And whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor. I believe the court relied upon. This is at paragraph 4 on page 6, which is the excerpt of record 8 and then going over to page 9. Are you reading the order or are you reading from the oral transcript? I'm reading from the order, Your Honor. The actual written order? Yes, Your Honor. Okay. Because I was just wondering what he said when he ruled in your favor from the bench. In substance, he said what was in the order, Your Honor. I mean, his exact words. I don't know if you can refer me to the transcript. I don't believe the transcript is part of this record, Your Honor. It isn't? I don't believe so. Why would it not be part of the record? I'm not the appellant, Your Honor. You're saying it's not part of the excerpts of record. Yes, Your Honor. It's still part of the record. It is part of the record. Yes, Your Honor. It was ordered. So it's before us. That's true. So we can see if it has been transcribed. It has been transcribed, Your Honor, and it is substantively largely the same as what we see here in the order. Right. However, as Your Honors are aware, this Court may affirm the judgment by any ground supported by the record. And I would submit that all of those factors that I mentioned, except the two that I said I didn't believe were squarely implicated, are inferable from the 11, I'm sorry, the 15 undisputed facts that were expressly undisputed at the summary judgment stage before Judge Reel. He says the transfer kept the assets within the Cortez family and occurred between insiders. That is the transfer of all of Superior's assets. Is it relevant that it kept, the transfer kept the assets within the Cortez, members of the Cortez family? I mean, can't you have, I mean, these are all independent actors. I don't believe that the record supports that conclusion, Your Honor. In fact, Mr. Juan Cortez, who is the son of Vicente Cortez that was running Superior and is today running the grain company, testified at his deposition, which is part of the record that was before the district court, that his father, Vicente Cortez, when he felt like it, simply took back the business and took all the assets of the business and started this second business in the same place the next day using the same assets and with the same suppliers, the same inventory, and the same customers. And I should add that the record is also undisputed based on the testimony. I think this is the only testimony on this point, but Your Honor referred to Ms. Morena Guadalupe Cortez's testimony in your questioning of Mr. Altagin, and she testifies, and this is in the excerpts of record, or rather I believe the supplemental excerpts of record in this case, that this supposed sale of the business from Mr. Cortez to his children was, they never were obligated to make any payments pursuant to that promissory note. And while I have just another minute and a half, of course I'm happy to answer any questions you have, but to address something that's in the briefs that was not mentioned this morning, this security agreement, this security agreement was put forward, first of all, there's no reference to any security agreement that says that this supposed debt evidenced by a promissory note is secured by all the assets of the business. What the promissory note says is that it's secured by the stock of Superior. And if Mr. Cortez wanted to, if his children in fact defaulted on a promissory note to him and he wanted to proceed pursuant to the promissory note, then he would have received the stock ownership of, on paper at least, of Superior Grain. That would have been Superior Grain's liabilities as well as its assets, including its debt to Atterbury Grain. Do you have a different point of view as to whether or not the grain company received some of Atterbury's corn and whether or not it was bad? Okay, the issue of whether the corn was bad, Your Honor, that was an issue perhaps in the arbitration before the National Grain and Feed Association. That was history before we ever got to even the bankruptcy, let alone the district court. I don't believe that issue is before this court. No, no, I know. I'm just wondering, was it decided in the arbitration? It was decided in the arbitration that the corn should have been paid for. That was the substance of the arbitration decision. This is going to the unjust enrichment claim. Yes, Your Honor. And I believe that that's explained in paragraph 16 of the district court's order, that defendants were unjustly enriched by the transfer to them, that is, Vicente Cortez and the grain company, of Superior's assets, Superior having been unjustly enriched by receiving the $825,000, or the corn that's represented by the $825,000 debt, to Atterbury without ever having paid for it. The theory of the unjust enrichment is the defendants come in, they take all of the assets of Superior, and they just leave the debt in a shell and then declare a bankruptcy. All right, thank you. Does anyone have any further questions? Okay, you're over your time. Thank you very much, counsel. And you had a little bit of time left. Thank you, Your Honor. I would just like to indicate that in Mr. Counsel's, we counsel admitted as undisputed that in July of 2012, Vincente Cortez wrote three checks totaling $140,000 to Superior. That's undisputed. That was in the record. All I've heard today from him are facts that should be litigated and tried to a jury to see whether or not my client has a personal judgment, which was initially against Superior, for $800-and-some-thousand against his personal life and assets, based upon a record that is replete with triable issues of fact. He spent the money. He paid for the equipment. He had a promissory note and a secured interest. He foreclosed on the promissory note. All of that was put into the record. We're entitled to our trial on the merits. I don't know how summary judgment could have been granted in this case. And anything the judge said on the record was put into exactly what Judge Reel signed. They just verbatim stated the same thing. All right. Thank you. Thank you, counsel. So Atterbury Grain v. Grain Company will be submitted, and this session of the court is adjourned for today. Thank you. All rise.
judges: Wardlaw, Gould, Collins